IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MISSISSIPPI RURAL WATER ASSOCIATION,                    **PLAINTIFF**
INC., *a Mississippi Non-Profit Corporation*

**VERSUS**                                 CIVIL ACTION NO. 3:14cv 848  FKB

MISSISSIPPI PUBLIC SERVICE COMMISSION,                  **DEFENDANTS**
BRANDON PRESLEY, *in his official capacity;*
LYNN POSEY, *in his official capacity;*
STEVE RENFROE, *in his official capacity*

## COMPLAINT

 **COMES NOW** the plaintiff, Mississippi Rural Water Association, Inc. (hereinafter sometimes referred to as "MRWAI" or "the Association"), a Mississippi non-profit corporation, and brings this action against the defendants Mississippi Public Service Commission (hereinafter sometimes referred to as "MPSC" or "the Commission"), a commission and statutory governmental body created pursuant to *Miss. Code Ann.* §77-1-1, *et seq.*; Brandon Presley, Lynn Posey, and Steve Renfroe, all in their official capacities only, as Commissioners of the Mississippi Public Service Commission ("MPSC"), all pursuant to the doctrine as stated in *Ex Parte Young,* 209 U.S. 123, 28 S. Ct. 44, 52 L. Ed. 714 (1908) seeking declaratory, injunctive and other final relief.  In support of its request for relief herein, the plaintiff would show as follows:

### I. Nature of the Action and Preliminary Statement

1. (a)  This action is based upon violations by the MPSC not only of *7 U.S.C.* §1926(b)[1]

---

[1] *7 U.S.C.* §1926(b) prohibits public bodies from curtailing or limiting water and sewer service provided or made available by any rural water association indebted to the United States Department of Agriculture/Rural Development ("USDA/RD"), formerly Farmers Home Administration ("FmHA") during the term of such indebtedness.

of the Consolidated and Rural Development Act of 1961 (*7 U.S.C.* §§1921, *et seq.*) ("the federal act") but moreover because the actions of the MPSC in adopting its Regulations, which all rural water association members of MRWAI complained of but must otherwise follow, are impliedly preempted by the federal act and because the MPSC's Regulations are unconstitutional under the Supremacy Clause of the *Constitution* of the United States. Furthermore, this action is based upon violations by the MPSC of Mississippi law and specifically *Miss. Code Ann.* §§77-3-5 and 77-3-3(e) which clearly state that the Commission has no jurisdiction to regulate the rates or rate collection processes of Mississippi non-profit rural water associations; or to attempt to interfere with or regulate the governance, or management practices of such water associations; or to otherwise involve itself or interfere with the "internal affairs" of such water associations.

(b)  7 *U.S.C.* §1926(b) states as follows:

Curtailment or limitation of service prohibited

The service provided through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

(c) *Miss. Code Ann.* §77-3-5 states:

Subject to the limitations imposed in this article and in accordance with the provisions hereof, the public service commission shall have exclusive original jurisdiction over the intrastate business and property of public utilities. However, the commission shall not have jurisdiction over the production and gathering of natural gas or the sale of natural gas in or within the vicinity of the field where produced, or over the facilities and equipment utilized in any such operations, including, but not limited to such facilities as separators, scrubbers and gasoline plants of all types. *Further, the commission shall not have jurisdiction over the governance,*

2

*management or other internal affairs of entities as described by paragraph (c) below. Moreover, the commission shall not have jurisdiction to regulate the rates for the sales and/or distribution:*

(a) Of gas, water, electricity or sewage disposal services by municipalities to such persons as said municipalities are authorized by law to serve;

(b) Of gas or electricity by cooperative gas or electric power associations to the members thereof as consumers, except as provided by Section 77-3-17, where service is rendered in a municipality;

(c) *Of water or sewage disposal service by nonprofit corporations or associations where the governing body of such corporation or association is elected by the consumers thereof or appointed by the county board of supervisors;* or

(d) Of water by districts organized under the provisions of Chapter 45, Laws of 1966-1967, Extraordinary Session. (Emphasis added).

(d) *Miss. Code Ann.* §77-3-3(e) defines "rates" as:

every compensation, charge, fare, toll, rental and classification, or the formula or method by which such may be determined, or any of them, demanded, observed, *charged or collected* by any public utility for any service, product or commodity described in this section, offered by it to the public, *and any rules, regulations, practices or contracts relating to any such compensation, charge, fare, toll, rental or classification….* (Emphasis added).

(e) MRWAI is a non-profit corporation duly organized and operating pursuant to the laws of Mississippi and is the trade organization bringing this action on behalf of a portion of its approximately 1017 member/organizations, specifically those rural water associations that are indebted to USDA/RD, which are each chartered as non-profit corporations indebted to USDA/RD or its predecessor federal agencies. All of these water associations have direct interests in this action and would otherwise have standing to sue in these proceedings in their own right. Further, the interests at stake in these proceedings are germane to the purposes of MRWAI and neither the claims asserted herein by MRWAI on behalf of its members, nor the

relief requested, require the participation of its individual members in this action.   Thus, MRWAI has standing to bring this action on behalf of its members.  See generally *Iowa League of Cities v. Environmental Protection Agency,* 711 F. 3rd 844, 868 (8th Cir. 2013); *Mississippi Manufactured Housing Association v. Board of Aldermen of City of Canton, Miss.*, 870 So. 2d 1189, 1192-1195 (Miss. 2004) (adopting the federal test to determine whether an association has standing to sue on behalf of its members).

## II.  Parties, Jurisdiction and Venue

2. (a)   As stated, the plaintiff, MRWAI, is a non-profit corporation duly organized and operating pursuant to the laws of the State of Mississippi; and is the trade organization bringing this action.     Its membership includes numerous rural water associations that are presently indebted to FmHA and its successor organization, USDA/RD,  each of which are chartered as non-profit corporations indebted to FmHA or its successor federal agencies, and all of which have direct interests in this action and would otherwise have standing to sue in these proceedings in their own right.

(b)   MRWAI's members as shown above hold exclusive franchises or certificates of public convenience and necessity issued by the Mississippi Public Service Commission ("MPSC" or "Commission") to provide, and are providing and making available to their members, water/sewer services to individual inhabitants and/or entities within their designated service areas within the State of Mississippi.  See *Miss Code Ann.* §§77-3-1, *et seq.*, and particularly §§77-3-11 and 77-3-12(1), which allow the MPSC the right to grant such public utilities, including the members of the plaintiff organization, exclusive certificates to provide water, sewer, electric, gas and other utility services to consumers in the public interest, for compensation.  These certificates, once granted, have been uniformly and historically adjudged

4

to be valuable property rights and are, together with a MRWAI member's water and sewer infrastructure and future income, considered to be collateral for loans made to MRWAI's members by financial institutions such as FmHA and its successor USDA agencies. Without these valuable exclusive certificates to serve, all other facilities or infrastructure of a rural water system would be of only nominal value. MRWAI's principal offices are located at 5400 N. Midway Road, Raymond, Mississippi 39154, with the same as its mailing address.

3. (a)  The Mississippi Public Service Commission is a Mississippi State Commission created pursuant to the provisions of *Miss. Code Ann.* §77-1-1, *et seq.* Its principal offices are located at 501 N. West Street, Woolfolk Building, Jackson, Mississippi. The MPSC mailing address is P. O. Box 1174, Jackson, Mississippi 39215-1174. It may be served with process by service upon the Attorney General of the State of Mississippi, as provided by *Fed. R. Civ. P.* 4(j)(2)(B) and *Miss. R. Civ. P.* 4(d)(5).

(b)  Brandon Presley is an adult resident citizen of Nettleton, Monroe County, Mississippi, and is the Northern District Commissioner of the MPSC with his office located at 218 Main Street, Nettleton, MS 38858.

(c)  Lynn Posey is an adult resident citizen of Union Church, Jefferson County, Mississippi, and is the Central District Commissioner of the MPSC with his office located at Woolfolk Building, 501 North West Street, Suite 201A, Jackson, MS 39201.

(d)  Steve Renfroe is an adult resident citizen of Moss Point, Jackson County, Mississippi, and is the Southern District Commissioner of the MPSC with his office located at 17 J. M. Tatum Industrial Drive, Hattiesburg, MS 39401.

4.  MRWAI's claims arise in this proceeding under and are authorized pursuant to 28 *U.S.C.* §1331 and 42 *U.S.C.* §1983 and 1988, based upon federal question claims under 7 *U.S.C.*

§ 1926(b). This Court also has jurisdiction pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202. Further, the Court has supplemental jurisdiction over this plaintiff's state law claims pursuant to 28 U.S.C. §1367. The Court has jurisdiction pursuant to the doctrines of pendent jurisdiction and implied preemption.

5.     Venue is proper in this judicial district because the defendant is located in this judicial district. The claims asserted in this Complaint arise in this judicial district, and subject service areas and water facilities exist within this judicial district. Venue is proper within this judicial district pursuant to 28 U.S.C. §1391(b).

### III.  Factual Allegations

6.     On June 4, 2013, the Mississippi Public Service Commission, pursuant to *Miss. Code Ann.* § 77-3-45 and Rule 26 of the *Public Utilities Rules of Practice and Procedure*, declared its intent, as shown in MPSC Docket No. 2013-AD-158, to consider the adoption of an additional Rule of Practice and Procedure before the Commission which "will require the waiver of initial deposits for certified victims of domestic violence." Since the proposed rule would affect its existing rules and regulations governing public utility service, in accord with §77-3-45 and the provisions of the Mississippi Administrative Procedures Law, *Miss. Code Ann.* §§25-43-1.101, *et seq.*, the MPSC sought and invited submission of written testimony or comments from all interested persons and public utilities. See initial filing in MPSC Docket No. 2013-AD-158, dated June 4, 2013, entitled "Commission Seeks Comments To Consider Waiver Of Initial Utility Deposits For Victims Of Domestic Violence", a copy of which is attached hereto and marked Exhibit "A"; and includes a proposal to add to its existing Rules and Regulations Governing Public Utility Service the following:

> A customer or applicant that has been determined to be a victim of domestic violence by a domestic violence program, by law

enforcement personnel, by the office of a District Attorney, or by the office of the Attorney General, shall be exempt from public utilities' initial deposit requirements, as established in that utility's tariff, for a period of sixty (60) days. This determination shall be evidenced by submission of a certification letter to the utility. The certification letter must be printed on the letterhead of the certifying agency or accompanied by a letter on agency letterhead identifying the certifying individual. The utility shall deem the certification letter and the contents thereof as confidential. The certification letter expires after ninety (90) days.

7.     A Notice of Proposed Rule Adoption was filed by the MPSC on June 11, 2013, entitled "Commission Seeks Comments to Consider Waiver Of Initial Utility Deposits For Victims Of Domestic Violence" (attached hereto as Exhibit "B"). This Notice proposed to adopt a new rule as shown above, which specifically would require all public utilities in Mississippi, including rural water associations to waive initial deposits for certified victims of domestic violence.

8.     Thereafter on October 15, 2013, the MPSC in its Docket No. 2013-AD-158 filed a scheduling order restating its intent to adopt a new rule requesting waiver of initial utility deposits for victims of domestic violence, as well as an "Economic Impact Analysis"[2] prepared by the Mississippi Public Utilities Staff (hereinafter referred to as "MPUS"). [3] See a copy of this scheduling order attached hereto as Exhibit "C" and the "Economic Impact Analysis" attached as Exhibit "C-1".

9.     The MPSC's "Economic Impact Analysis" (Ex. "C-1") was prepared by Dr. Christopher Garbacz, the Director of Economics and Planning Division of the Mississippi Public

---

[2] In order to legally adopt a new rule, each state agency must comply with the Administrative Procedures Law (*Miss Code Ann.* §§25-43-1.101, *et seq.*), which includes the requirement pursuant to *Miss. Code Ann.* §25-43-3.105 that "…each agency proposing the adoption of a rule or amendment of an existing rule imposing a duty, responsibility or requirement on any person shall consider the economic impact the rule will have on the citizens of our state and the benefits the rule will cause to accrue to those citizens."

[3] The Mississippi Public Utilities Staff is a separate Mississippi State Agency created by *Miss. Code Ann.* §77-2-1 and is designed to monitor the actions of the MPSC and make recommendations concerning the actions of the Commission.

Utilities Staff ("MPUS") and was filed in MPSC Docket No. 2013-AD-158 on October 17, 2013. Following the format for such an economic impact statement as is required by Mississippi's Administrative Procedures Law, *Miss. Code Ann.* §25-43-3.105, the MPUS "analysis" states in part the following:

> (a)  the specific legal authority authorizing the promulgation of the new rule is *Miss. Code Ann.* §77-3-45;
>
> (b)  that "The amendment is needed to provide financial relief to victims of domestic violence and ease the transition to a new living environment."
>
> (c)  as to the benefits which will likely occur as a result of the proposed action, Dr. Garbacz stated: "The rule will provide financial relief to victims of domestic violence by providing a waiver of utility deposits for those who meet the requirements."
>
> (d)  as to the effect the proposed action will have on the public health, safety and welfare, Dr. Garbacz stated: "The rule provides for public health, safety and welfare of victims of domestic violence by making it easier for a transition to a new living environment that is safer."
>
> (e)  in response to the cost to be incurred by the MPSC as a result of the adoption of the proposed rule, Dr. Garbacz stated that the cost would be minimal.
>
> (f)  as to an estimate of the cost or economic benefit to all persons directly affected by the proposed action, Dr. Garbacz stated: "The cost to utilities may relate to any lost revenues relating to inability to pay bills which deposits are designed to mitigate.  These costs are estimated to be minimal.  The benefits are not quantifiable. Qualitative benefits to designated victims may be important.  See below under "data and methodology" for further discussion."
>
> (g)  as to the requirement that an analysis be made of the impact the proposed rule will have on small business,  Dr. Garbacz states: "There is no impact on small businesses."
>
> (h)  as to a comparison of the costs and benefits of the proposed rule to the probable costs and benefits of not adopting the proposed rule or significantly amending an existing rule, Dr. Garbacz states: "There is no alternative to the proposed rule to address this

particular problem. While funding is possible through the legislature or private entities no such funding has been proposed."

(i)  as to a determination of whether less costly methods or less intrusive methods exist for achieving the purpose of the proposed rule where reasonable alternative methods exist which are not precluded by law, Dr. Garbacz stated: "There are  no reasonable alternative methods to achieve the purpose of the proposed rule."

(j)  as to a description of reasonable alternative methods, where applicable, for achieving the purpose of the proposed action which were considered by the agency and a statement of reasons for rejecting those alternatives in favor of the proposed rule, Dr. Garbacz states: "There are no reasonable alternative methods to achieve the purpose of the proposed rule."

(k)  as to a detailed statement of the data and methodology used in making estimates required by this subsection, Dr. Garbacz states: "A review of similar rules in the states of Texas and Louisiana indicates that the benefits outweigh costs from a qualitative point of view.  Programs in those states appear to deliver benefits at a minimal cost.  There are no complaints or problems of record."

10.    After reviewing the Economic Impact Analysis referred to above (Ex. "C-1"), representatives of the Plaintiff met with representatives of the Mississippi Public Utilities Staff to discuss the apparent lack of data in support of the conclusions made by the MPUS in its Economic Impact Analysis.  Plaintiff was informed, as shown in a series of emails later sent to plaintiff's representatives by Dr. Garbacz (Ex. "D"), that there was no data to support the success, failure, or even the need for the domestic violence programs adopted in Texas or Louisiana by the counterparts to the MPSC in those states.  It was indicated to plaintiff that the MPUS viewed the efforts of MPSC to adopt such a program in Mississippi as more of a public relations program than anything else; and that no effort was made to determine the economic impact of such a program on rural water associations or other public utilities.  See subsequent emails sent to plaintiff by Dr. Garbacz dated November 14, 2013, and attached hereto as a part of Exhibit "D".

11. Subsequent to the initial notices by the Commission inviting comments in regard to its intent to adopt a rule requiring waiver or postponement of initial utility deposits by victims of domestic violence, numerous comments were filed with the MPSC in Docket No. 2013-AD-158. Included in those filings was a comment by representatives of the Attorney General of Mississippi (hereinafter "AG") filed on June 24, 2013, copy of which is attached hereto as Exhibit "E". While the AG supported "any efforts to assist victims of domestic violence," the AG also called for the MPSC to provide a clearer definition of "domestic violence" and who would be exempt from public utility initial deposit requirements. The AG then listed in his comments numerous examples of who might be eligible for designation as a victim - some instances caused by disturbances rising to the level of crimes; and others that would not, such as "spouses or former spouses, or a child of such spouse or former spouse; persons living together as spouses, or who formerly lived together as spouses, or a child of such co-habitant; persons who are dating or who formerly dated; persons who have a child (biological or adopted) in common; and certain familial relationships, which may include parents, children, grandparents, brothers, sisters, and others related by blood or marriage who have resided with the victim."

Furthermore, the Attorney General suggested in his comments that the MPSC rule should "impose a requirement that public utilities having possession of such certifications [that the customer is a victim of domestic violence] adopt and implement rules/procedures for maintaining the confidentiality of that information."[4] As will be further shown below, the MPSC took this particular recommendation by the Attorney General to heart and later amended its original proposed rule to impose severe penalties on all public utilities, including rural water associations and their employees, if any information of individual domestic violence certifications were

---

[4] It is noteworthy that the Mississippi Supreme Court recently required Entergy to release private and confidential information of its customers to the Madison County tax assessor and Grand Jury seeking to locate and collect overdue taxes from its citizens. See Entergy Mississippi, Inc. v. State of Mississippi, 132 So. 3d 568 (Miss. 2014).

given, intentionally or otherwise, by water association employees, to third parties.  See Final

Order later issued by the MPSC on September 9, 2014, a copy of which is attached hereto as

Exhibit "S-1".  See also email from attorney for the MPSC dated July 28, 2014 to counsel for

MRWAI attached hereto as Exhibit "F", which contains a slightly different version of the

MPSC's new regulation as finally adopted and shown in Exhibit "S-1".

In summary, the comments of the AG mentioned above cited numerous examples of

those who might be designated as victims of domestic violence and thus eligible for waiver of

deposit status.  Indeed, as shown in a recent newspaper article in the September 13, 2014, edition

of *The Clarion Ledger* "data shows about 10,000 people annually are victims of domestic

violence in Mississippi."  See newspaper article attached hereto as Exhibit "G".  Thus, if the

proposed rule is adopted, the rural water associations of Mississippi and all other Mississippi

public utilities, profit or non-profit, would be required to engage in potentially massive and

expensive confidential book-keeping operations to distinguish those eligible for tariff deposit

waivers and those who would not be eligible.  Further, the proposed new rule would subject the

water association employees and their companies to personal liability pursuant to the Rule and

the provisions of *Miss. Code Ann.* §93-21-109(2) for any innocuous "observation or comment",

or for inadvertent disclosure of such sensitive information.  Likewise, the water associations and

their employees could easily run afoul of the criminal penalties of *Miss. Code Ann.* §77-3-

81(1)(a) for their failure or "neglect" in complying with lawful orders of the MPSC. It is

noteworthy that these matters and prospects were not considered or even acknowledged in the

MPUS Economic Impact Statement (Ex. "C-1").  Thus, the MPSC should be enjoined from

adopting the rule on procedural grounds alone.

13.     MRWAI filed its Petition To Intervene in the Commission's Docket No. 2013-AD-158 on June 26, 2013 (See Exhibit "H" attached hereto) and made several comments therein in opposition to the new Rule.  The Commission issued an Order granting MRWAI's Petition To Intervene on that same date (see Exhibit "I" attached hereto).   Thereafter, MRWAI filed additional comments in opposition to the proposed new Rule on November 15, 2013, a copy of which is attached hereto as Exhibit "J" with accompanied exhibits.   In its written comments (Ex. "J")[5] MRWAI stated, *inter alia*, the following:

(a) The proposed rule, which calls for a waiver of the payment of utility deposits for 60 days by designated victims of domestic abuse, should not apply to the non-profit corporate members of MRWAI since (1) they are public utilities and, pursuant to *Miss. Code Ann.* §77-3-5, their water and sewer rates (and the collection thereof) are not subject to regulation by the Mississippi Public Service Commission; and (2) the MPSC has no jurisdiction to impose such restrictions on rural water associations, since pursuant to *Miss. Code Ann.* §77-3-5, the MPSC

> shall not have jurisdiction of the governance, management and other internal affairs…

of such water associations.  Furthermore, MRWAI stated in its comments that the proposed rule change would be in violation of 7 *U.S.C.* §1926(b) and 42 *U.S.C.* §1983 in regard to all of MRWAI's members/water associations that are indebted to USDA/RD.

(b) In its comments, MRWAI further stated that (1) the proposed new rule, which calls for a 60-day waiver of the payment of required utility deposits by  domestic violence victims, would run afoul of United States Department of Agriculture (USDA) regulations which require rural water/sewer associations that borrow money from USDA/RD to collect water and sewer deposits from new customers of the water associations; (2) that Dr. Christopher Garbacz's

---

[5] MRWAI also filed additional Comments (a copy of which is attached hereto as Exhibit "K") which will be addressed below.

"Economic Impact Statement for Victims of Domestic Violence" (Ex. "C-1"), is inconclusive and totally fails to comply with the requirements of the Mississippi Administrative Procedures Law, and the requirements of *Miss. Code Ann.* §25-43-3.105(2), which states that such an economic impact statement must be filed in justification of any rule change by a Mississippi State Agency such as the Mississippi Public Service Commission; (3) that Dr. Garbacz's Statement fails to establish a need for the new rule since he offered no empirical data establishing such a need, financial or otherwise, and did not define the term "domestic violence";[6] (4) that Dr. Garbacz admits that similar rules (excluding penalties), as now proposed, were adopted in Texas and Louisiana with little or no thought or investigation, before or after their adoption; and that upon recent inquiry, rule abuse and complaints in those states are now manifesting themselves.  See Exhibit "C-1".

(c)  In its comments (Ex. "J"), MRWAI asserted and now once again asserts that the economic impact analysis of Dr. Garbacz is not credible for use to support the adoption of the proposed new rule by the MPSC but instead should be used to demonstrate why the new rule should *not* be adopted, since Dr. Garbacz offers no meaningful analysis supporting its adoption.

14.    On November 15, 2013, the Electric Power Associations of Mississippi, Inc. (hereinafter "EPA") an agricultural association organized under Mississippi's Agricultural Association Law (*Miss. Code Ann.* §70-17-1, *et seq.*), representing its 25 rural electric cooperatives organized pursuant to *Miss. Code Ann.* §§77-5-201, *et seq.*, filed comments in opposition to the proposed new rule in the aforesaid MPSC Docket No. 2013-AD-158.  A copy of those comments, with exhibits, are attached hereto as Exhibit "L" and made a part hereof by reference.  In its comments, the EPA broadly stated, *inter alia,* the following:

---

[6] It is noteworthy that, Dr. Garbacz furthermore stated that the benefits of adopting the new rule are "not quantifiable", thus admitting that he could not quantify the need for the new rule economically.

(a)    The Commission lacks jurisdiction to enforce the proposed rule against the EPA's membership (25 rural electric cooperatives).  It is noteworthy that EPA and its members "hereby notify the Commission that they do not intend to comply with the rule if it is adopted" (see p. 2 of Ex. "L").

(b)    The proposed rule is preempted as to certain EPA members, namely, those that sell power purchased by them from the Tennessee Valley Authority.

(c)    Mississippi law bars regulation by the Commission in the field of deposits.

(d)    The Economic Impact Statement accompanying the proposed rule is insufficient and in violation of the Mississippi Administrative Procedures Law ("MAPL"), *Miss. Code Ann.* §25-43-1.101, *et seq.* (see pp. 3-7 of Ex. "L").

It is noteworthy, that the EPA, on page 5 of its Comments, states that in arriving at his conclusion, Dr. Garbacz …

> does not appear to have consulted any Mississippi utilities on the subjects of what revenues might be lost or how many individuals might be expected to request a waiver of the initial deposit requirement under the proposed rule, nor does he appear to have reviewed any statistics related to revenues for Mississippi utilities or to domestic violence victims in the State that would support his belief that the results from Texas and Louisiana would be repeated here with the adoption of the proposed rule.  There is simply no basis for his general declaration that the losses resulting from the adoption of the proposed rule would be "minimal," and the EIS is suspect, at best.

It is further noteworthy that the EPA states:

> Mr. Garbacz's EIS also wholly fails to consider that each of Mississippi's electric power associations is owned by its members and operated on a not-for-profit basis.  Mr. Garbacz suggests that the "utilities" will experience only "minimal" losses with the implementation of the new rule, *but his contention is both inaccurate and misleading since these losses will have to be borne by the individual members of each electric power association, rather than by the "utility" itself.  There is, without question, a*

14

> *vast difference between what a privately-owned utility might consider to be a "minimal" cost in comparison to what an individual or small business owner might consider to be a "minimal" cost.* The subject EIS wholly fails to consider that, at least in some instances, it is not the "utility" that will suffer economic losses as a result of the implementation of the proposed rule, and since the EIS makes no distinction between the various groups that will be negatively affected by the rule, it is insufficient under the MAPL. (Emphasis added).

As the Court is now aware, the vast majority of MRWAI's members are non-profit corporations owned by their members; and, as with the EPA members, the losses sustained by the water associations, as a result of the new proposed rule, will necessarily be borne by each individual member of the rural water association since the cost of water service will probably increase as a result of the waivers proposed by the MPSC.

15.     Moreover, in response to the MPSC's general request for additional comments in regard to the proposed new rule to require utility companies to waive deposit fees for domestic violence victims, MRWAI, the Electric Power Associations of Mississippi, Inc. ("EPA") and numerous other parties responded to the MPSC in writing as shown by the following and attached hereto as Exhibit "M", to-wit:

a.     Hayes Creek Water Association (Aug. 15, 2013, and Nov. 7, 2013)
b.     Mississippi Attorney General
c.     Delta Rain, Inc.
d.     Hilldale Water District
e.     Hurricane Hills Water Association
f.     Casey Jones Water Association
g.     NTS Utilities Association
h.     Sunflower Utility Association, Inc.
i.     Combined Utilities
j.     Young's Water & Sewer District, Inc.
k.     Lexie Water Association
l.     Rawls Spring Utility District
m.     Town of Golden
n.     American Water Works Association
o.     Bear Creek Water Association, Inc.

    p.     Entergy Mississippi, Inc.
    q.     Cadaretta Water Association
    r.     East Quitman Water Association
    s.     Highway 98 East Water Association
    t.     South Central Water Association, Inc.
    u.     Gulf Coast Women's Center for Nonviolence
    v.     Center for Violence Prevention
    w.    Mississippi Coalition Against Domestic Violence

It is noteworthy that one of those responding, (Sandra Morrison, the Executive Director of the Gulf Coast Women's Center for Nonviolence), stated as follows:

> Specifically:
> - assisting victim with financial assistance for utility deposits does not pose a problem for us in the south.  There are already grants and other community programs providing this assistance.  However, the problem is assisting <u>victims with outstanding balances.</u>  Grants generally do not assist with the typed of expense and balances are much higher than the costs of the deposit.  Outstanding balances are very often barriers that prevent women from being able to establish independent [*sic*], not the cost of the deposit.  Also, note that the balances are very often not the victims [*sic*] alone.
>
> - Confidentiality of victims is of grave concern.  The current proposal does not provide for confidentiality and put victims at risks and in dangerous situations. We know through our own experience and through research that more battered women are killed by their estranged partner when the leave the [*sic*] abusive relationship than any other time.
>
> - Too many entities have authority to declare an individual as a victim of domestic violence.  This too effects confidentiality.  Also, it could possible [*sic*] lend itself to fraud, resulting in defamation of domestic violence (DV) victims.  Assisting victims with housing is a slow process that involves financial management, budgeting/planning for the future, and safety planning – all of which shelter programs provide, but none of which are addressed in the proposal.  These services are offered to help the victim obtain housing that is affordable and safe so that they can remain in the housing and not move from one location to another.
>
> - Victims may be better helped, PSC funds or donated services might be better spent and fiduciary oversight might be more sufficient if:

    \* Small grants are provided to shelter programs
and earmarked for utility deposits only.

    \* The Utility companies 'forgive outstanding balances
(or at least a significant portion).

    \* Limit applicant determination to only certified shelter
programs and the Attorney General's office.  And/or

    \* Provide DV shelters with a discounted utility bill –
(money saved on bills would allow programs to assist
victims with outstanding balances).

All of these recommendations would assist victim with housing
relocation and safety planning.  In addition, confidentiality issues
are resolved.

Thus, the MPSC, in regard to adoption of its proposed rule as previously stated (See. Ex. "A"

attached hereto), received wide-ranging responses, and strong opposition from non-profit water

associations (all of whom are indebted to USDA/RD) and others to its public inquiry dated June

4, 2013.  Most organizations created to deal with domestic violence problems were favorable to

the proposal.  For-profit public utilities (owned by stockholders) that provide electricity services

to customers did not object to the proposed rule.

    16.    After receiving the responses as shown above, the MPSC, on its own motion,

canceled its December, 2013, hearing which was originally set to receive final comments, upon

which a decision in regard to the proposed new rule would be rendered. See Order dated

November 26, 2013, a copy which is attached hereto as Exhibit "N".  However, by its Order

dated July 16, 2014, a copy of which is attached hereto and marked Exhibit "O", the MPSC once

again noticed Docket No. 2013-AD-158 for hearing, this time on August 5, 2014.  At the hearing

on August 5, 2014, all of those who had previously been allowed to intervene as parties in

Docket No. 2013-AD-158 (including Mississippi Rural Water Association, Inc.), as well as

members of the general public, were invited to appear and make further comments, prior to a

decision by MPSC as to whether to adopt the proposed new rule.

17.     Prior to the August 5, 2014, hearing, counsel for MRWAI conferred with counsel

for the MPSC and was informed by email on July 28, 2014, that new language for the proposed

new rule would be addressed at the August 5, 2014, hearing, to-wit:

> A customer or applicant that has been determined to be a victim of
> domestic violence by a domestic violence program shall be exempt from
> public utilities' initial deposit requirements, as established in that utility's
> tariff, for a period of sixty (60) days.   This determination shall be
> evidenced by submission of a certification letter to the utility. The
> certification letter must be printed on the letterhead of the certifying
> agency or accompanied by a letter on agency letterhead identifying the
> certifying individual.   The certification letter expires after ninety (90)
> days.
>
> The utility shall deem the certification letter and the contents thereof as
> confidential.  Any employee, contractor, volunteer or agent of a public
> utility in possession of information which would tend to identify a victim
> of domestic violence, who discloses any information that is exempt from
> disclosure under the Mississippi Public Records Act of 1983, or makes
> any observation or comment about the identity or condition of any person
> admitted to a shelter or receiving services of a shelter, unless directed to
> do so by an order of a court of competent jurisdiction, shall be subject to
> all applicable penalties imposed by Mississippi law for violation of
> Commission rules and, in addition, *shall be civilly liable to the person
> whose personal information was disclosed in the amount of Ten Thousand
> Dollars ($10,000.00), plus any compensatory damages that the individual
> may have suffered as the result of the disclosure and any penalties
> imposed.* (Emphasis added).

See email correspondence from Shawn Shurden, Esq. to James H. Herring dated July 28, 2014,

attached hereto as Exhibit "F".  As stated previously, the language sent to Mr. Herring by Mr.

Shurden was later changed again as shown in the Commission's Final Order dated September 9,

2014 (Exhibit "S-1").  It is noteworthy that to the knowledge of MRWAI, no public notice of the

proposed change in the language for the proposed new MPSC rule was given prior to the August

5, 2014, hearing; and no official written notice of the proposed change was communicated to

those parties who had intervened in the MPSC proceeding other than through the late email shown above (Ex. "F"). Thus, fair warning was not given to interested parties of the substantial change to the original notice of the proposed rule adoption, in violation of *Miss. Code Ann.* §25-43-3.107, and the MPSC should therefore be enjoined from adopting the proposed new Rule as shown in the Final Order adopted by the MPSC in Docket No. 2013-AD-158, a copy of which is attached hereto as Exhibit "S-1"

18.     Thereafter, in response to being notified that the changes in the proposed new rule as shown in Mr. Shurden's email (Ex. "F") would be considered at the August 5, 2014, hearing, MRWAI filed additional comments (Exhibit "K" attached hereto) with the MPSC in opposition to the proposed new rule, in which it adopted the comments of EPA mentioned above (Ex. "L"). MRWAI also filed a new affidavit, prepared by Engineer/City Planner, James A. Elliott, P.E., dated August 4, 2014, in opposition to the new Rule. A copy of Mr. Elliott's affidavit is attached hereto as a part of Exhibit "K. This new affidavit of Mr. Elliott addresses the proposed language change in the new rule and points out that the initial fees to be paid by a new customer are usually substantial, thus potentially creating significant hardships on a rural water association that is called upon to waive such fees, even for a relatively short period of time. Mr. Elliott also discussed the potential liability of a water association and its employees that inadvertently disclose information concerning the domestic violence victim status of a water customer.

19. (a) A hearing on the proposed new rule was held on August 5, 2014, and a verbatim copy of the transcript of that hearing, as prepared by MPSC personnel, is attached hereto as Exhibit "P". [7]   At that hearing, a majority of the members of the Commission made clear that they supported the adoption of the new rule in some form although they took the matter under

---

[7] At the August 5, 2014, hearing, numerous parties expressed opposition to the new rule, including the American Water Works Association. See transcript of hearing, pp. 13-14 (Ex. "P").

advisement for a final ruling until further conferences could be held to see if the parties, including the MPSC could agree on certain further changes in the proposed rule. See pg. 29 of the transcript attached hereto (Ex. "P"). It is noteworthy that in the hearing, one of the Public Service Commissioners made the following statement:

> But I want you to put your petty power plays of your water boards aside for just a minute and look at the fact that this would help people in Mississippi.

See p. 24, L. 15-18, Exhibit "P". This quotation received wide publicity throughout Mississippi and was publicized nationally as show in Exhibits "Q-1", "Q-2", "Q-3" and "Q-4" attached hereto. In addition, this same Commissioner is shown in his Facebook communications, exhorting his "fight" for domestic violence victims against rural water associations, as shown in Exhibit "R" attached hereto.

    (b) On September 9, 2014, the MPSC issued its "Final Order Adopting Rule" in which it adopted the proposed new rule but once again changed the wording slightly to read as follows:

1. TEMPORARY WAIVER OF DEPOSIT A customer or applicant that has been determined to be a victim of domestic violence by a domestic violence shelter, as defined in Miss. Code Ann. §93-21-101 (2014), shall be exempt from public utilities' initial deposit requirements, as established in that utility's tariff for new accounts at existing service locations, for a period of sixty (60) days. This determination shall be evidenced by submission of a certification letter to the utility. The certification letter must be printed on the letterhead of the certifying agency or accompanied by a letter on agency letterhead identifying the certifying individual. The certification letter expires after ninety (90) days.

2. CONFIDENTIALITY OF CERTIFICATION LETTER The utility shall deem the certification letter and the contents thereof as confidential. Any employee, contractor, volunteer or agent of a public utility in possession of information which would tend to identify a victim of domestic violence, who discloses any information that is exempt from disclosure under the Mississippi Public Records Act of 1983, or makes any

> observation or comment about the identity or condition of any person admitted to a shelter or receiving services of a shelter, unless directed to do so by an order of a court of competent jurisdiction, shall be subject to all applicable penalties imposed by Mississippi law for violation of Commission rules, and in addition, shall be civilly liable to the person whose personal information was disclosed in the amount of Ten Thousand Dollars ($10,000), plus any compensatory damages that the individual may have suffered as the result of the disclosure and any penalties imposed.

See a complete copy of the "Final Order" and new Rule, with attachments, attached hereto as Exhibit "S-1". This ruling was reconsidered pursuant to *Miss. Code Ann.* §77-3-65 on timely application for rehearing filing in the MPSC docket 2013-AD-158 within thirty (30) days of the date of the Commission's Final Order (see Application for Re-Hearing filed on September 26, 2014, by South Central Water Association, Inc., attached hereto as Exhibit "T-1"; and MRWAI's Application for Rehearing filed on October 3, 2014, attached hereto as Exhibit "T-2"). Thereafter the Commission reaffirmed its Final Order (Exhibit "S-1") by rendering its Order Denying Applications For Rehearing on October 20, 2014, a copy of which is attached hereto as Exhibit "S-2".

20.     It is apparent and obvious that the actions and activities of the MPSC, and those of its Commissioners and their representatives that are acting in concert as described above, are ongoing; and that those actions presently constitute and will in the future constitute an infringement and curtailment, under color of law, of the ability of the members of MRWAI to provide their water/sewer services to their customer/members; that those actions and activities constitute and will in the future constitute a willful curtailment and deprivation under color of law of the valuable property rights of MRWAI's members and their ability to provide their services to their customer/members, without due process of law; and that those actions and activities also constitute an official policy of prejudicial favoritism by denial of equal protection

of law in violation of the *Constitution of the United States,* 42 *U.S.C.* §1983, and 7 *U.S.C.*
§1926(b); as well as Mississippi state law.  See *Miss. Code Ann.* §§77-3-1, *et seq.*, and in
particular, §§77-3-3(e), 77-3-5 and 77-3-12(1), which clearly states that public utility certificates
of public convenience and necessity granted by MPSC are exclusive in nature.  As shown by
*City of Madison, MS vs. Bear Creek Water Association, Inc.,* 816 F. 2d 1057 (5th Cir. 1987),
these certificates are valuable property rights and the activities of water associations providing
services thereunder cannot be curtailed or infringed upon so long as they are indebted to the
USDA/RD or its predecessor, the Farmers' Home Administration (FmHA).  In the *Bear Creek*
case, the Fifth Circuit further stated:

> This language indicates a congressional mandate that local
> governments not encroach upon the services provided by such
> associations, be that encroachment in the form of competing
> franchises, new or additional permit requirements, or similar
> means. To read a loophole into this absolute prohibition, as
> Madison would have us do, and allow a city to do via
> condemnation what it is forbidden by other means, would render
> nugatory the clear purpose of §1926(b). See *Moore Bayou Water
> Association, Inc. v. Town of Jonestown,* 628 F. Supp. 1367 (N.D.
> Miss. 1986) (holding municipal condemnation of water
> association's facilities and certificate violative of §1926(b). *Id.,* p.
> 1059

See also *North Alamo Water Supply Corporation v. City of San Juan, Texas,* 90 F. 3d 910 (5th
Cir. 1996) ("the service area of a federally indebted water association is sacrosanct"); and *Title
Ins. Co. of Minn. v. I.R.S.,* 963 F. 2d 297, 300 (10th Cir. 1992) (noting that "under the Supremacy
Clause of the United States Constitution, Article VI, Clause 2, federal law preempts and
invalidates state law which interferes with or is contrary to federal law."); *Blue Circle Cement,
Inc. v. Bd. Of County Comm'rs of County of Rogers,* 27 F. 3d 1499, 1504 p. 4 (10th Cir.1994)
("[F]or the purposes of the Supremacy Clause, the constitutionality of local ordinances is

analyzed in the same way as that of statewide laws.") (quoting *Hillsborough County v. Automated Med. Lab., Inc.,* 471 U.S. 707, 713, 105 S. Ct. 2371, 85 L.Ed. 2d 714 (1985)).

There is thus preemption of any local or state law that purports to take away or restrict the services of an indebted rural water association. Further see *Robertson Properties, Inc. v. Detachment of Territory from Public Water Supply Dist. No. 8 of Clay County,* 153 S.W. 3d 320, 236 (Mo. App. W.D., 2005) (citing *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978) [when upon examination, state law conflicts with federal law, the state laws are preempted]). See also *Rural Water System No. 1 v. City of Sioux Center, Iowa,* 967 F. Supp. 1483 (D.C. Iowa)(1997). Finally, see *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F. 3d 694, 715-719 (10th Cir. 2004) (water district's 1926(b) claims not affected by release of District's service area by regulatory authority).

Moreover, the actions of the MPSC as stated above are not only violations of the provisions of *7 U.S.C.* § 1926(b) but also because the actions of the MPSC in adopting the regulation and rule complained of, which all rural water associations must otherwise follow, are impliedly preempted by the Consolidated and Rural Development Act of 1961 (*7 U.S.C.* §§1921, *et seq.*); and the application by the MPSC of the proposed Rule is unconstitutional pursuant to the Supremacy Clause of the *Constitution* of the United States.  See *Crosby v. National Trade Council*, 530 U.S. 363, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000).

It is submitted that without doubt, through the federal act mentioned above, Congress intended to "occupy the field" in regard to protecting rural water associations indebted to USDA/RD and that the proposed Rule which endangers the viability of those water associations, as well as the financial stability and security of every employee of those associations, stands as an obstacle to the accomplishment and execution of the goals and objectives of the aforesaid

federal act, including *7 U.S.C.* §1926(b), as well as the objectives of Congress in passing the act. Thus, the proposed Rule of the MPSC must yield to the aforesaid act of Congress.

21.     All of the members of MRWAI referred to above are non-profit water associations and are indebted to USDA/RD and its predecessor, the Farmer's Home Administration, an executive agency of the United States of America.  They are in the business of providing water and sewer services to their customers in compliance with 7 *U.S.C.* §1926(b). Moreover, as shown by *Miss. Code Ann.* §77-3-5, the MPSC's actions are also in violation of Mississippi Law and it has no authority or jurisdiction to regulate the rates[8] of Mississippi rural water associations duly certificated, pursuant to §§77-3-1, *et seq.*, to provide water and sewer services to their customer/members for compensation.  As shown above, Section 77-3-5 states as follows:

> Subject to the limitations imposed in this article and in accordance with the provisions hereof, the public service commission shall have exclusive original jurisdiction over the intrastate business and property of public utilities.  However, the commission shall not have jurisdiction of the production and gathering of natural gas or the sale of natural gas in or within the vicinity of the field where produced, or over the facilities and equipment utilized in any such operations, including, but not limited to such facilities as separators, scrubbers and gasoline plants of all types. *Further, the commission shall not have jurisdiction of the governance, management or other internal affairs of entities as described by paragraph (c) below.  Moreover, the commission shall not have jurisdiction to regulate the rates for the sales:*
>
> (a) Of gas, water, electricity or sewage disposal services by municipalities to such persons as said municipalities are authorized by law to serve;

---

[8] As stated above, "Rates" are defined in *Miss. Code Ann.* §77-3-3(e) as: "every compensation, charge, fare, toll, rental and classification, or the formula or method by which such may be determined, or any of them, demanded, observed, *charged or collected* by any public utility for any service, product or commodity described in this section, offered by it to the public, *and any rules, regulations, practices or contracts relating to any such compensation, charge, fare, toll, rental or classification;*". (Emphasis added).  Thus, the attempts of the MPSC to determine when and if water users should pay water rates, including deposits, are clearly in violation of Mississippi law.

(b) Of gas or electricity by cooperative gas or electric power associations to the members thereof as consumers, except as provided by sections 77-3-15 and 77-3-17, where service is rendered in a municipality;

(c) *Of water or sewage disposal service by nonprofit corporations or associations where the governing body of such corporation or association is elected by the consumers thereof or appointed by the county board of supervisors;*

(d) Of water by districts organized under the provisions of Chapter 45, Laws of 1966-1967, Extraordinary Session.

(Emphasis added).

Thus, MPSC and its Commissioners, although made aware of the federal and state statutory prohibitions to such activities, are clearly attempting through their rule-making process to exceed their jurisdiction and engage in activities in violation of 7 *U.S.C.* §1926(b), 42 *U.S.C.* §1983, and 42 *U.S.C.* § 1988, as hereinafter more fully appears; and have clearly indicated their intent to violate those laws in the future, thereby entitling MRWAI on behalf of its members to a declaratory and final judgment prohibiting such activities pursuant to 28 *U.S.C.* §§2201 and 2202 and the other federal statutes as shown above.  Furthermore, the MPSC and its Commissioners have indicated through their rule-making process, an intent to violate Mississippi law as well, in violation of *Miss. Code Ann.* §§77-3-5 and 77-3-3(e), by interfering and attempting to establish internal rules of the MPSC that are designed to regulate the water rates charged by the members of MRWAI, the procedures used by those water associations in collecting those rates,  and by attempting to interfere with the governance, management and internal affairs of the water associations represented herein by MRWAI.

22.    MRWAI, on behalf of its member/water associations, therefore seeks redress by way of declaratory and injunctive relief, and damages pursuant to 42 *U.S.C.* §1988.  This is an urgent and necessitous case where immediate injunctive relief is necessary to stop the

Mississippi Public Service Commission and those acting in concert with it from further efforts to infringe upon and curtail the activities of the water association/members of MRWAI in providing water/sewer services to the consumers and water users who make-up the membership of MRWAI's member organizations; and just as important, to protect the financial security of the employees of all of the water associations of Mississippi and the financial security and viability of the water associations themselves.

23. As stated above,

(a) Plaintiff's claims arise under and are authorized, *inter alia*, by the provisions of *7 U.S.C.*1926(b), *42 U.S.C.* §§1983 and 1988, as hereinafter more fully appears; pursuant to *28 U.S.C.* §§2201 and 2202 (declaratory judgments); and

(b) This Court has jurisdiction under *28 U.S.C.* §§1331, and under the doctrines of implied preemption and pendent jurisdiction; and pursuant *28 U.S.C.* §1367.

## IV. **Other Factual Allegations**

24. Over the years, the MPSC, pursuant to *Miss. Code Ann.* §§77-3-1 *et seq.*, has granted to MRWAI members permanent and exclusive certificates of public convenience and necessity for the provision of water and sewer services.

25. By the terms of the aforesaid certificates, the rights, powers and privileges granted MRWAI's member organizations constitute an exclusive right to do the acts set out therein including the exclusive right to provide water services to thousands of businesses, residential customers, and other customer/members located in the service areas of MRWAI's member organizations, all as shown above.

26. As shown in Sections I, II, and III of this Complaint, the defendant, MPSC, is attempting and has demonstrated its clear intent to regulate the rates charged, including the

methods used in collecting those rates, by these water associations in providing services to their customer/members; and, as stated, the proposed MPSC rule will without doubt otherwise curtail and impose (and make the employees of these water associations subject to) extreme penalties upon the members of MRWAI for violations of the proposed new rule of the MPSC as stated in this Complaint.  MRWAI states that all of the requirements as shown above to be imposed by MPSC on the members of MRWAI, are and will be in violation of the provisions of 7 *U.S.C.* §1926(b); as well as the provisions of *Miss. Code Ann.* §§77-3-1, *et seq.* as described above.  As stated, *City of Madison, Mississippi v. Bear Creek Water Ass'n, Inc.,* 816, F. 2d 1057 (5th Cir. 1987), is the defining case which sets out the rights and obligations of and the protections afforded entities such as those represented by the Plaintiff in this action.

27.     MRWAI has clearly indicated to the MPSC that it has no desire to circumvent the powers, rules and regulations of MPSC, but must insist on behalf of its members, that the protections granted to MRWAI's members by the federal statutes mentioned above be enforced, pursuant to the supremacy clause of the *Constitution of the United States* (Art. VI).[9]

## V.  First Claim for Relief

28.     MRWAI, acting on behalf of its members that are indebted to USDA/RD, incorporates by reference all allegations in paragraphs 1 through 27 above, as though set forth in full here.

29.     MPSC has manifested its intent to illegally and without jurisdiction to limit, encroach upon and curtail the ability of the members of MRWAI to provide and make water services available to their customers for compensation in their exclusive water and sewer service

---

[9] Art. VI states: "This Constitution and the Laws of the United States which shall be made in pursuance thereof... shall be the supreme law of the Land; and the Judges in every state shall be bound thereby, anything in the Constitution or laws of any state not withstanding." Art. VI, *Constitution of the United States.*

areas, despite repeated requests by MRWAI not to do so, by imposing restrictive rules of practice and procedure upon water associations, in an attempt to regulate their rates and the procedures used by them in collecting such rates, in violation of federal and state law.

30.     The actions of MPSC as stated above, including the declaration of its intent to adopt and later adopting regulatory rules for all public utility water service providers in Mississippi, including the members of MRWAI, are in violation of 7 *U.S.C.* §1926(b), which protects rural water associations from encroachment by governmental bodies such as MPSC, as well as *42 U.S.C.* §1983, when such governmental bodies engage in illegal activities designed to force oppressive restrictions on rural water associations, under color of law.  As stated, 7 *U.S.C.* §1926(b) prohibits MPSC from curtailing or limiting the ability of MRWAI member associations to provide and otherwise make water/sewer services available to their customer/members for compensation during the terms of their indebtedness to USDA/RD.

31.     The members of MRWAI referred to above are indebted to USDA/RD, formerly Rural Economic and Community Development Service ("RECDS") and formerly Farmers Home Administration (FmHA), are "associations" within the meaning of 7 *U.S.C.* §1926.  At all times material hereto, they are making water/sewer services available in their certificated service areas and wish to continue to be able to do so, unfettered by restrictive rules of the MPSC which are in violation of 7 *U.S.C.* §1926(b) and curtail their ability to do so.

32.     Accordingly, MRWAI and the members of MRWAI referred to above, by and through MRWAI, are entitled to the rights, privileges, and protections granted by 7 *U.S.C.* §1926(b) in this proceeding.  Moreover, MRWAI is entitled to a judgment, as stated above, that the actions of the MPSC are not only violations of the provisions of *7U.S.C.* § 1926(b) but also because the actions of the MPSC in adopting the regulation and rule complained of, which all

rural water associations must otherwise follow, are impliedly preempted by the Consolidated and Rural Development Act of 1961 (*7 U.S.C.* §§1921, *et seq.*).

The application by the MPSC of the proposed Rule is unconstitutional pursuant to the Supremacy Clause of the *Constitution* of the United States.  See *Crosby v. National Trade Council*, 530 U.S. 363, 120 S. Ct. 2288, 147 L. Ed. 2d 352(2000).

MRWAI is entitled to a judgment, without doubt, through the federal act mentioned above, that Congress intended to "occupy the field" in regard to protecting rural water associations indebted to USDA/RD and that the proposed Rule which endangers the financial viability of those water associations as well as the financial stability and security of every employee of those associations stands as an obstacle to the accomplishment and execution of the goals and objectives of the aforesaid federal act, including *7 U.S.C.* §1926(b), as well as the objectives of Congress. Thus, the proposed Rule of the MPSC must yield to the aforesaid act of Congress.

33.    MRWAI is entitled to a declaratory judgment pursuant to 28 *U.S.C.* §§2201 and 2202, and/or a final judgment granting the relief sought herein.  There exists a dispute and actual controversy between the parties that cannot be resolved absent declaratory relief by this Court since the Commissioners have publicly and clearly stated their intent to violate *7 U.S.C.* §1926(b) and to illegally impose and enforce a new restrictive rule on the members of MRWAI that restricts their ability to regulate their water rates, allows the MPSC to invade and interfere with the internal affairs of said water associations and the procedures used to collect those rates from water users, all under color of law, and will endanger the continued existence, viability and the financial security of all rural water associations in Mississippi and the financial security of

their employees.   Thus, Plaintiff is therefore entitled to a declaratory and final judgment declaring the rights and legal relations of the parties as follows:

(a)  the MRWAI's members as described above are "associations" within the meaning of 7 *U.S.C.* §1926(b) and are currently indebted to USDA/RD and at all times have and are providing and making available water services to their certificated areas as granted to them by MPSC;

(b)  MRWAI's members are entitled to the rights, privileges and protections granted by 7 *U.S.C.* §1926(b) during the terms of their indebtedness and their employees are entitled to be protected from permanent and irreparable harm which would otherwise occur unless MRWAI is granted the relief which it seeks in this proceeding.

(c)  that the actions of the Defendant, MPSC, and all those acting in concert with MPSC as described above, will unlawfully curtail, encroach upon and limit the ability of the members of MRWAI to provide services to their customer/members in their exclusive service areas, in violation of 7 *U.S.C.* §1926(b).

(d)  that the actions of the defendants in enforcing its new regulations are preempted and unconstitutional pursuant to the federal act, aforesaid.

## VI.  Second Claim For Relief

34.   Plaintiff incorporates by reference all allegations in paragraphs 1 through 33 above, as if set forth in full herein.

35.   MPSC, through its actions mentioned above and in proposing to adopt the above-mentioned new rule, has also manifested its intent to exceed its jurisdiction as stated in the Mississippi statutes which created the MPSC and invested the MPSC with certain regulatory powers over Mississippi public utilities, namely: *Miss. Code Ann.* §§77-3-1, *et seq.*, and

particularly 77-3-3(e) and 77-3-5 as amended.  Specifically, by proposing the adoption of the regulatory rule described above, MPSC is attempting to illegally regulate the rates charged by the members of MRWAI and their methods and procedures used in collecting those rates as defined in *Miss. Code Ann.* §77-3-3(e), and is attempting to illegally and without jurisdiction interfere with the management and governance policies of the members of MRWAI, as well as their internal affairs, all in violation of *Miss. Code Ann.* §77-3-5, under color of law.

36.     MRWAI submits on behalf of its members as described above, that it is (1) entitled to a declaratory and final judgment against MPSC prohibiting the adoption and enforcement of the aforesaid proposed rule pursuant to 28 *U.S.C.* §§2201 and 2202; and pursuant to the provisions of 7 *U.S.C.* §1926(b), *42 U.S.C.* §1983, 1988; and pursuant to the doctrine of implied preemption and *28 U.S.C.* §1367; and (2) that the actions of MPSC already taken and proposed as described above are in violation of *Miss. Code Ann.* §§77-3-1, *et seq.*, including §§77-3-3(e) and 77-3-5.

37.  This Court also has jurisdiction over MRWAI's second claim for relief described herein pursuant to 28 *U.S.C.* §1367.  MRWAI's claim in its second claim for relief arises from the same case or controversy relative to the MPSC as shown above.

### VII. Third Claim For Relief

38.     Plaintiff incorporates by reference each and every allegation in paragraphs 1 through 37 above, as though set forth here.

39.     MRWAI has demonstrated a strong likelihood of success on the merits of this case.

40.     Should the MPSC be allowed to enforce its unlawful and unconstitutional Rule as described above, the viability of the plaintiff's members as rural water associations will be at risk

and endangered; and the purposes of the aforesaid federal act and *7 U.S.C.* §1926(b) will be defeated.  Furthermore, the financial security of plaintiff's members and their employees will likewise be at risk

42.    The issuance of a preliminary and permanent injunction in this proceeding would be in the public interest and will not cause substantial harm to the defendant or those acting with or in concert with MPSC.

42.    MRWAI is therefore entitled to preliminary and permanent injunctive relief as follows:

(a)  enjoining MPSC and all those in active concert with the defendant, from taking any further action to adopt or enforce the regulatory rule as described above or to take any action which in any way would otherwise curtail or prevent the water/sewer associations/ members of MRWAI, directly or , from providing services to their members in violation of *7 U.S.C.* §1926(b) and from imposing or otherwise collecting, prior to beginning or providing water or sewer service to customers, their normal deposits, membership fees, or other normal charges and fees as shown in their tariffs and policies and procedures heretofore approved by the MPSC, or which are otherwise required by their lending agencies such as the USDA/RD or its predecessor lending agencies, including the Farmers' Home Administration;

(b)  enjoining the MPSC and all those in active concert with them from attempting directly or indirectly, to require the members of MRWAI to waive their normal fees or water and sewer deposits from their customers; to otherwise regulate the water or sewer rates of the members of MRWAI as defined in *Miss. Code Ann.* §77-3-3(e) and §77-3-5,

including all actions or procedures necessarily taken or to be taken by such members of MRWAI to collect those rates from their customer/members;

(c)   enjoining the MPSC and all those in active concert with them, from attempting directly or indirectly to interfere or influence in any way, directly or indirectly the "governance, management or internal affairs or activities" of the members of MRWAI, directly or indirectly, in violation of 7 *U.S.C.* §1926(b) and *Miss. Code Ann.* §77-3-5, including any interference with the operation of MRWAI's water associations on a day to day basis; their collection of water/sewer deposits from new customers prior to providing service; the conduct of their board of directors' meetings or annual membership meetings; or from attempting to otherwise encroach upon or influence in any way the internal activities of the plaintiff's member organizations, other than as specifically granted to the MPSC by state law;

(d)   enjoining the MPSC and all those acting in concert with it from taking any further action in violation of the declaratory judgments and/or injunctive relief granted in this action, including any action, directly or indirectly, either presently or in the future, which would harass, curtail or otherwise impede the ability of MRWAI or its members to carry out their duties and responsibilities to their customers and members; and ruling that any such action of the MPSC or its representatives, or those acting in concert with it, would subject the defendant and such representatives to be held in contempt of this Court and subject them to appropriate sanctions by this Court for failure to comply with the Court's directives in this action.  Further, this Court should retain jurisdiction of this case, should any controversies arise between the parties after the issuance of the declaratory judgment and injunctive relief sought by the plaintiff.

### VIII. Prayer

**WHEREFORE,** MRWAI respectfully asks for the following relief:

1.      That the claims for relief as shown in paragraphs V, VI, VII and VIII be granted and that the Court will enter a judgment in favor of MRWAI on all claims for relief asserted in this Complaint;

2.      A declaratory and final judgment in favor of the Plaintiff as follows:

(a)   that the members of the plaintiff, MRWAI (herein acting on behalf of its members as cited and described above), are associations within the meaning of 7 *U.S.C.* §1926(b); that the members of MRWAI as cited above are indebted to USDA/RD or its predecessor USDA lending agencies, and at all times material, have provided or made available water services to their exclusive certificated service areas as granted to them by the MPSC;

(b)  that the Plaintiff, MRWAI and its members as described above, are entitled to the rights, privileges and protections granted pursuant to 7 *U.S.C.* §1926(b) during the terms of their indebtednesses to USDA/RD;

(c)  that the actions taken by MPSC and all those acting in concert with the defendant as described above, including the attempt by MPSC to set rules which will curtail or infringe upon the ability of the members of MRWAI in conducting their businesses, duties and operations, including the ability to set and collect water/sewer rates and require immediate payments by prospective customers of water/sewer deposits; or other fees and charges which are a part of their tariffs heretofore approved by the MPSC, prior to providing utility services to new customers, have been preempted by the Consolidated and Rural Development Act of 1961 and shall not be enforced against the

members of MRWAI; a would otherwise unlawfully curtail or limit the services of MRWAI's members, all in violation of 7 *U.S.C.* §1926(b); and *42 U.S.C.* §1983.

(d)   that the actions of MPSC as described above are also in violation of Mississippi State law, including the provisions of *Miss. Code Ann.* §§77-3-3(e) and 77-3-5.

3.   Preliminary and permanent injunctive relief in favor of MRWAI and its members as described above and as follows:

(a)   enjoining the MPSC and all those in active concert with the defendant, from taking any further action to adopt or enforce the regulatory rule or rules as described above, or any other rule which in any way would curtail or prevent the water/sewer associations and other members of MRWAI, directly or indirectly, from imposing or otherwise collecting, prior to beginning or providing water or sewer service to customers, its normal deposits, membership fees, or other normal charges and fees as shown in their tariffs and policies and procedures heretofore approved by the MPSC, or which are otherwise required by their lending agencies such as the USDA/RD or its predecessor lending agencies, including the Farmers' Home Administration;

(b)   enjoining the MPSC and all those in active concert with them from attempting directly or indirectly, to regulate the water or sewer rates of the members of MRWAI as defined in *Miss. Code Ann.* §77-3-3(e) and §77-3-5, including all actions or procedures necessarily taken or to be taken by such members of MRWAI to collect those rates from their customer/members;

(c)   enjoining the MPSC and all those in active concert with them, from attempting directly or indirectly to interfere with or influence, directly or indirectly, the

"governance, management or internal affairs or activities" of the members of MRWAI, including any interference or attempt to influence the operation of their water associations on a day to day basis; the adoption of procedures for requiring the collection water/sewer deposits from new customers prior to providing service to those customers; the conduct of the board of directors' meetings or annual membership meetings of the water associations; or to otherwise encroach upon or attempt influence in any way the internal activities of the plaintiff's member, directly or indirectly, other as allowed specifically the MPSC by state law;

(d)   enjoining MPSC and all those acting in concert with it from taking any further action in violation of the declaratory and/or final judgments or injunctive relief granted in this action, including any action, directly or indirectly, either presently or in the future, which would harass, curtail or otherwise impede the ability of MRWAI or its members to carry out their duties and responsibilities to their customer/members; and that the Court will rule that any such activity of the MPSC or its representatives or those acting in concert with it would subject the defendant and such representatives to be held in contempt of this Court and subject them to appropriate sanctions by this Court for failure to comply with the Court's directives in this action;

(e)   enjoining the MPSC and all those in active concert with Defendant from taking any further action in violation of the declaratory and/or final judgment granted in this action between the parties and that the Court will retain jurisdiction of this action should any controversies arise in the future in regard to the subject matter of this proceeding.

4.      That the Court will award plaintiff and allow plaintiff to recover from MPSC appropriate compensatory damages, including interest at the rate allowed by law, and for the time as such damages may appear from the proof in this case.

5.      An award to MRWAI of its costs, including all costs of litigation and reasonable expert witness fees, attorney's fees and expenses, all pursuant to 42 *U.S.C.* §§1983 and 1988; and Rule 54(d), *Federal Rules of Civil Procedure*.

6.      Granting MRWAI such other and further relief as the Court deems just and Proper.

This the **31**ˢᵀ day of October, 2014.

> Respectfully submitted,
> **MISSISSIPPI RURAL WATER ASSOCIATION, INC.**
>
> **BY:** _____
> **JAMES H. HERRING**
> **ATTORNEY FOR PLAINTIFF**

**JAMES H. HERRING, MSB#2380**
**HERRING, LONG & CREWS, P.C.**
**P. O. BOX 344**
**CANTON, MISSISSIPPI 39046**
**TELEPHONE:  601-859-2573**
**FACSIMILE:  601-859-3955**
**EMAIL:  jhh38@bellsouth.net**